RECEIVED
IN ALEXANDRIA, LA.
JUN 2 9 2010
TONY R. ___ CLERK
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GUILLERMO RUIZ, | CIVIL ACTION NO. 1:10-cv-0605 |
| AKA GUILLERMO RUIZ GARCIA | |
| FED. REG. NO. 50819-004 | |
| VS. | SECTION P |
| | JUDGE DEE D. DRELL |
| WARDEN JOE KEFFER, ET AL. | MAG. JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Guillermo Ruiz, aka Guillermo Ruiz Garcia, Fed. Reg. No. 50819-004, a prisoner in the custody of the Federal Bureau of Prisons[1], filed the instant civil action on April 9, 2010. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the pleadings be **DISMISSED.**

### Background

On April 9, 2010, petitioner was a BOP inmate incarcerated at the United States Penitentiary, Pollock, Louisiana (USP-Pol). On

---

[1] Petitioner is serving concurrent sentences of 312 months imposed on November 25, 1998 by the United States District Court for the Southern District of Florida following his conviction for firearms violations. See <u>United States v. Guillermo Ruiz</u>, No. 1:97-cr-00099.

that date he filed a hand-written *pro se* pleading styled, "Petition for Writ of Habeas Corpus." Petitioner attacked a prison disciplinary conviction and the confiscation of "legal documents" by prison authorities. He complained that officials at USP-Pol were tampering with his mail, retaining and confiscating legal documents and engaging in extortion and involuntary servitude. He also accused these officials of stealing funds belonging to the United States Treasury, Special Maritime Jurisdiction and making false arrests.

In support of these allegations he alleged that on or about February 26, 2010 he submitted to the USP-Pol mail-room, documents to be sent via Registered Mail addressed to an individual identified as Melissa Mark, petitioner's Attorney-in-Fact in New York. He also included in this proposed mailing documents [2] addressed to Judge Donald L. Graham, the United States District Judge for the Southern District of Florida who presided over his criminal case in that jurisdiction. Ms. Mark was in turn

---

[2] According to petitioner, these documents included a letter rogatory, letter of instruction, notice of counterclaim, affidavit by specific negative averment, private discharging indemnity bonds, financing statement evidence filed Secretary of State Kentucky, "accepted for valve" warrant for arrest, indictment, PSI, Judgment in criminal case, and sentence transcripts. He also included a Declaration International Treaty of Peace to the World, International Security Agreement, a lawful protest, and a mission statement addressed to the New York Department of State.

instructed to mail these documents to Judge Graham.

These documents were apparently confiscated by the mail room employees and turned over to the USP-Pol SIS investigators who then charged petitioner with extortion, blackmail, and threatening another with bodily harm. Petitioner was then arrested and placed in "segregating confinement."

He accused the USP-Pol administration of engaging "... in direct conspiracy against Petitioner['s] unalienable rights to legal discharge [of] his criminal case, as a matter of law pursuant to House Joint Resolution 192 of June 5, 1933 and that also USP-Pollock Administration is been injury and damage commercially willfully and knowingly Petitioner's private legal documents, commercial affair with the U.S. Department of the Treasury and IRS, by willfully tampering his mail and confiscated without any authority or due process of law."

He also alleged that because he is a "Sovereign Minister Prenipontentiary [sic] and a Secured Party Creditor and refused to present myself as a United States citizen, inmate, person, corporation, entity, legal fiction, I am been constantly been harass, threatening by USP-Pollock Staff/Employees."

He complained of being continually harassed by incident reports because he "refused to volunteer to involuntary servitude

'slavery' by been force to under threat, duress and coercion to serve as a slave."

Petitioner maintained that the staff "...keep harassment Petitioner taking good time and other so-called privileges ... in violation of House Joint Resolution 192 of June 5, 1933..." He also alleged that he is harassed with urine tests which apply only to inmates and that "... he is not an inmate, neither ... has [he] entered into any contract with USP-Pollock..."

He concluded the pleading by requesting a subpoena duces tecum to obtain "... evidence in support of their allegations and false accusations against petition..." and to "release and return[] all private property legal documents and personal property been in custody of USP-Pol Administration..."

Petitioner also provided a copy of the Incident Report charging him with threatening another with bodily harm or any other offense extortion, blackmail, or protection in violation of BOP Regulations, Code 203 and 204-A [Doc. #1, p. 15]; a copy of the Confiscation and Disposition of Contraband Notice [Id., p. 16]; and the Administrative Detention Order directing petitioner's placement in Administrative Detention pending a full investigation. [Id., p. 17]

Thereafter, since the pleading was not on an approved form,

petitioner was ordered to amend to comply with the Local Rules of Court. On May 23, 2010 he submitted an Application for Federal Writ of Habeas Corpus Under 28 U.S.C. §2241 on the form approved by the Judge's of this District. He again alleged that he was challenging a prison disciplinary proceeding, however, he alleged no additional factual support to suggest that he is in custody in violation of the Constitution, laws, or treaties of the United States. He did, however, provide documents entitled, "Special Bond for Indemnity..."and, "Indemnity Bond".

### Law and Analysis

Petitioner implies that his placement and continued detention in administrative segregation, under the circumstances described in his petition, violates his due process rights as guaranteed by the Fifth Amendment. He also complains of various other conditions and circumstances concerning the seizure of his papers and documents. He seeks habeas corpus relief pursuant to the provisions of 28 U.S.C. §2241. However, petitioner can utilize habeas corpus proceedings only if he is challenging the fact or duration of his confinement. Preiser v. Rodriquez, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.,2d 439 (1973); see also Spina v. Aaron, 821 F.2d 1126, 1128 (5th Cir.1987).

If "a favorable determination would not automatically entitle

[the prisoner] to accelerated release" from custody he may not utilize *habeas corpus* procedures and must instead vindicate his rights through a properly filed civil rights proceeding. <u>Carson v. Johnson</u>, 112 F.3d 818, 820-21 (5th Cir. 1997), quoting <u>Orellana v. Kyle</u>, 65 F.3d 29, 31 (5th Cir.1995) (per curiam), *cert. denied*, 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996). Here, petitioner did not allege that good time credits were forfeited as a result of the incident report and he apparently does not seek the restoration of forfeited good time credits.[3] Therefore, a favorable determination on his claims would not result in an accelerated release from custody.

Instead petitioner maintains that he is wrongfully confined in administrative detention and, that prison officials have confiscated his legal papers. As such, his petition attacks the <u>conditions</u> of confinement and not the <u>fact or duration</u> of confinement.

Attacks on conditions of confinement are not cognizable in a *habeas* petition. See <u>Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't</u>, 37 F.3d 166, 168 (5th Cir.1994) ("The

---

[3] Of course, if petitioner's good time credits were wrongly forfeited in a prison disciplinary proceeding, *habeas corpus* would be the appropriate method of attacking the proceedings and obtaining the restoration of those good time credits and thus a speedier release from custody. See <u>Henson v. U.S. Bureau of Prisons</u>, 213 F.3d 897, 898 (5th Cir.2000) However, petitioner is advised, exhaustion of administrative remedies must be accomplished before petitioner files such a petition in the District Court. See <u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir.1994). Based upon the facts alleged thus far, it does not appear that petitioner lost any good time credits as a result of the disciplinary proceeding complained of. Further, it does not appear that petitioner completed the administrative remedies process utilized by the BOP.

core issue in determining whether a prisoner must pursue *habeas corpus* relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement.")

Since success in this proceeding would not entitle petitioner to immediate or accelerated release, he is not entitled to relief pursuant to 28 U.S.C. §2241. In other words, since petitioner's placement in administrative segregation and the seizure of his papers has had no effect on the duration of his confinement he is not entitled to *habeas* relief. Compare <u>Dixon v. Hastings</u>, 202 Fed. Appx. 750 (5th Cir. 2006)(unpublished).

A civil rights action[4] provides the appropriate vehicle to attack these allegedly unconstitutional conditions of confinement. <u>Johnson v. Pfeiffer</u>, 821 F.2d 1120, 1123 (5th Cir.1987); <u>Preiser</u>, 411 U.S. at 498, 93 S.Ct. at 1840-41. The undersigned is reluctant to construe the petition as asserting civil rights claims pursuant to <u>Bivens</u>. Allowing petitioner to prosecute this action based on the payment of the $5.00 *habeas corpus* filing fee instead of the $350.00 filing fee applicable to civil rights actions would allow petitioner to circumvent the filing fee requirements of the Prison

---

[4] Since petitioner complains about the deprivation of rights at the hands of federal and not state actors, his cause of action would be authorized by <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Litigation Reform Act.

Accordingly, petitioner's claims regarding the conditions of his confinement should be dismissed without prejudice to his ability to pursue such claims by filing the appropriate action.[5]

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DISMISSED WITHOUT PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file

---

[5] It is not entirely clear that petitioner could succeed on his due process claim even if he filed the appropriate cause of action. This is so because, "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A prisoner's due process rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Thus, relying on Sandin, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir.1996) (quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a prisoner's claim that the additional restrictions imposed on those in administrative segregation violate due process. See Martin v. Scott, 156 F.3d 578, 580 (5th Cir.1998) (per curiam)(Absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest.). In other words, when a prisoner is lawfully incarcerated, he loses, by virtue of his confinement, many of the rights and privileges that most citizens enjoy. Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere changes in the conditions of confinement ... do not implicate due process concerns." See Madison, 104 F.3d at 768).

Furthermore, petitioner is cautioned that before he may proceed with such a civil rights complaint alleging Fifth or Eighth Amendment violations, he would be required, pursuant to the provisions of 42 U.S.C. §1997e to exhaust the administrative remedies provided by the BOP. It appears that petitioner may have started the process, but he has not completed it.

specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,* Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).**

Signed, in chambers, Alexandria, Louisiana _June 29, 2010._

_____

**JAMES D. KIRK**
**UNITED STATES MAGISTRATE JUDGE**